**Law Office of Patrick Mause, PLLC**

Patrick W. Mause
290 North Meyer
Tucson, Arizona 85701
State Bar No. 24269
520.342.0000
520.342.0001 (Fax)
EMail: Patrick@PMauseLaw.com

Attorney for Plaintiff William Hyde

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| William Hyde,<br>Plaintiff,<br>vs.<br>Reliance Standard Life Insurance Company, a foreign corporation;<br>Defendant. | Case No.<br>**COMPLAINT** |

For his Complaint, plaintiff William Hyde ("Hyde" or "Plaintiff") alleges as follows:

**Parties, Venue, and Jurisdiction:**

1. Plaintiff William Hyde was a resident of Pima County, State of Arizona at the times relevant to this Complaint.

2. Upon information and belief, defendant Reliance Standard Life Insurance Company ("Reliance Standard") is a Pennsylvania corporation authorized to do business and doing business in Arizona.

3. Through his previous employment, Mr. Hyde was insured under an LTD Plan (the "Plan") issued to his employer by Reliance Standard.

4. Mr. Hyde's coverage under the LTD Plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

5. Reliance Standard, through its administrator and "sister company,"[1] Matrix Absence Management ("Matrix"), terminated Mr. Hyde's LTD benefits by letter dated June 20, 2016 (the "Termination Letter").

6. A true and correct copy of the Termination Letter is attached hereto as Exhibit 1.

7. Reliance Standard is an ERISA claim fiduciary under the Plan.

8. Matrix is an ERISA claim fiduciary under the Plan.

9. Mr. Hyde's claims are for: long-term disability (LTD) benefits, and other benefits to which he may be entitled and which were provided under his employer's ERISA-governed benefits plan pursuant to 29 U.S.C. § 1132(a)(1); and equitable relief due to Reliance Standard's and its administrator and "sister company's" breaches of their fiduciary obligations to Mr. Hyde pursuant to 29 U.S.C. § 1132(a)(3).

10. The Court has jurisdiction under ERISA, 29 U.S.C. § 1001 *et seq*.

11. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

**<u>Background: Mr. Hyde Becomes Covered Under The LTD Plan, Becomes Disabled, And Reliance Standard Approves His LTD Claim:</u>**

12. Mr. Hyde began work for non-party Asarco, LLC, in approximately 2006.

13. Effective October 1, 2008, Mr. Hyde became covered under the LTD Plan, which was issued to Asarco by defendant Reliance Standard with an effective date of October 1, 2008. A true and correct copy of the Plan is attached hereto as Exhibit 2.

14. The LTD Plan's definition of "'Totally Disabled' and 'Total Disability'" provide that a claimant is disabled if he "cannot perform the material duties of his/her Regular Occupation" during the first 24 months of LTD benefits, and that a claimant is

[1] *See* http://www.reliancestandard.com/home/products/absence-solutions/std-and-ltd/ (Reliance Standard describing Matrix as its "sister company" in the management of short- and long-term disability claims (last visited February 1, 2017)); *see also* http://www.matrixcos.com/about.html (describing "Reliance Standard" as one of its "sister companies" and noting that, like Reliance Standard, Matrix is "A Member of the Tokio Marine Group" (last visited February 1, 2017)).

considered disabled if "after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation":

> "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
> (1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation;
>   (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;
>   (b) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and
> (2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

(Ex. 2, LTD Plan at 10)

15. The Plan states that "'Any occupation' means an occupation normally performed in the national economy for which an Insured is reasonably suited based upon his/her education, training or experience." (Ex. 2, LTD Plan at 9)

16. The Plan specifies that "Written Proof of Total Disability" must be provided to Reliance Standard to support a claim for benefits:

> **WRITTEN PROOF OF TOTAL DISABILITY:** For any Total Disability covered by this Policy, written proof must be sent to us within ninety (90) days after the Total Disability occurs. If written proof is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof was given as soon as was reasonably possible. In any event, proof must be given within one (1) year after the Total Disability occurs, unless the Claimant is legally incapable of doing so.

(Ex. 2, LTD Plan at 13)

17. The Plan provides that LTD benefits will end, among other things, if the "Insured ceases to be Totally Disabled" or "fails to furnish the required proof of Total Disability."

> **TERMINATION OF MONTHLY BENEFIT:** The Monthly Benefit will stop on the earliest of:
> (1) the date the Insured ceases to be Totally Disabled;
> (2) the date the Insured dies;
> (3) the Maximum Duration of Benefits, as shown on the Schedule of Benefits page, has ended; or
> (4) the date the Insured fails to furnish the required proof of Total Disability.

(*See* Ex. 2, LTD Plan at 18; *compare* Ex. 1, Termination Letter at 2 (quoting Plan))

18. In June 2012, Mr. Hyde became disabled due to complications of multiple sclerosis and other conditions.

19. Multiple sclerosis ("MS") is a chronic, progressive disease.

20. Mr. Hyde applied for benefits under Asarco's short-term disability plan and those benefits were approved.

21. Mr. Hyde then applied for benefits under the LTD Plan, and Reliance Standard, through its "sister company" Matrix, approved his LTD claim.

22. Pursuant to the Plan terms, Mr. Hyde was entitled to LTD benefits until December 15, 2014, as long as he remained unable "perform the material duties of his/her Regular Occupation."

23. Effective on or about December 16, 2014, Mr. Hyde was only entitled to continuing LTD benefits if he was unable to "perform the material duties of Any Occupation."

24. By letter dated January 26, 2015, Reliance Standard, through its "sister company" and administrator Matrix, approved Mr. Hyde's claim for "any occupation" LTD benefits.

25. The January 26, 2015 letter approving Mr. Hyde's "any occupation" LTD benefits stated that his "benefits will continue to… 2037 or until you no longer meet the provisions of your policy, whichever comes first."

26. Reliance Standard, however, prematurely terminated Mr. Hyde's benefits even though he remained totally disabled under the Plan and even though his condition did not improve.

**<u>Matrix Terminates Mr. Hyde's LTD Benefits</u>**

27. By letter dated June 20, 2016, Reliance Standard, through its "sister company" and administrator Matrix, terminated Mr. Hyde's LTD benefits effective July 1, 2016. (*See* Ex. 1, Termination Letter)

28. In the Termination Letter, Reliance Standard advised Mr. Hyde of the Plan's definition of total disability and when monthly benefits would terminate, and advised Mr. Hyde that "we have determined that you do not meet your group policy's definition of *Total Disability* and your claim must be denied." (Ex. 1, Termination Letter at 4 (italics in original))

29. In the Termination Letter, Reliance Standard advised Mr. Hyde of his appeal rights, stating he could request a review of the termination decision within 180 days of receiving the Termination Letter, and that he "should state any reasons why you feel this determination is incorrect, and should include any written comments, documents, records, or other information relating to your claim for benefits, including but not limited to any information submitted in conjunction with any claim for Social Security disability or other benefits which you would like us to consider":

> You may request a review of this determination by submitting your request in writing to:
>
> Reliance Standard Life Insurance Company
> Quality Review Unit
> P.O. Box 8330
> Philadelphia, PA  19101-8330
>
> This written request for review must be submitted within 180 days of your receipt of this letter. Your request should state any reasons why you feel this determination is incorrect, and should include any written comments, documents, records, or other information relating to your claim for benefits, including but not limited to any information submitted in conjunction with any claim for Social Security disability or other benefits which you would like us to consider. Only one review will be allowed, and your request must be submitted within 180 days of your receipt of this letter to be considered.

(Ex. 1, Termination Letter at 4)

30. The Termination Letter further advised Mr. Hyde that "[u]nder normal circumstances, you will be notified in writing of the final determination within 45 days of the date we receive your request for review." (Ex. 1, Termination Letter at 4-5)

31. The Termination Letter further advised Mr. Hyde that "[i]f we determine that special circumstances require an extension of time for processing, you will ordinarily be

notified of the decision no later than 90 days from the date we receive your request for review." (Ex. 1, Termination Letter at 5)

32. The Termination Letter did not inform Mr. Hyde that any particular information was "necessary" to perfect his claim or for Reliance Standard to conduct its appeal review. (Ex. 1, Termination Letter at 1-5)

33. The Termination Letter did not inform Mr. Hyde that a "narrative" from his attending physician(s) or a "full accounting" of his medications was "necessary" to perfect his claim or for Reliance Standard to conduct its appeal review. (Ex. 1, Termination Letter at 1-5)

**Mr. Hyde Appeals Reliance Standard's Denial**
**And Reliance Standard Fails To Make A Decision On His Claim**
**Within Its ERISA Deadlines**

34. ERISA imposes many requirements on insurers and administrators who administer LTD claims.

35. Among other things, ERISA requires that an administrator such as Matrix and/or Reliance Standard that terminates disability benefits to "set forth, in a manner calculated to be understood by the claimant… A description of any additional material or information **necessary for the claimant to perfect the claim** and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(g)(1)(iii) (emphasis added).

36. As noted above, the June 20, 2016 Termination Letter did not state that a "narrative" letter from Mr. Hyde's attending physician(s) or a "full accounting" of his medications was "necessary" to perfect his claim or decide his appeal. (Ex. 1, Termination Letter)

37. Similarly, the LTD Plan does not require a "narrative" from a claimant's attending physician(s) or a "full accounting" of a claimant's medications to support a disability claim. (Ex. 2, Plan)

38. Under ERISA, Reliance Standard cannot impose obligations or requirements on claimants that are not in the LTD Plan. *Canseco v. Const. Laborers Pension Trust*, 93 F.3d 600, 608 (9th Cir. 1996) ("Imposition of conditions outside the plan amounts to arbitrary and capricious conduct."); *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 459–60 (9th Cir. 1996) ("To construe the Plan this way, as the Committee did, effectively imposes a new requirement for coverage. However, an administrator lacks discretion to rewrite the Plan."

39. Under ERISA, 29 C.F.R. § 2560.503-1(i)(4), "the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing."

40. Under ERISA, 29 C.F.R. § 2560.503-1(i)(3)(i), Reliance Standard had forty-five days from the date Mr. Hyde filed his appeal to make a decision on the appeal.

41. Under ERISA, 29 C.F.R. § 2560.503-1(i)(3)(i), if "special circumstances" occurred and Reliance Standard was unable to make a decision within the initial forty-five day period, it may extend the decision deadline by an additional forty-five days but must first notify Mr. Hyde in writing of the "special circumstances" warranting an extension and the date by which a decision would be made.

42. Under ERISA, if an administrator fails to make a decision within its statutory and/or regulatory deadlines, the claimant is deemed to have exhausted his administrative remedies and his claim is therefore ripe for suit. 29 C.F.R. § 2560.503-1(l) ("In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.").

43. Under ERISA, 29 C.F.R. § 2560.503-1(i)(4), an administrator's deadline to make a decision on an appeal is tolled "due to a claimant's **failure to submit information necessary to decide a claim**." (emphasis added).

44. Corresponding with a claimant regarding his or her claim does not toll the ERISA deadlines. *Heimeshoff v. Hartford Life & Accident Insurance Co.*, 134 S. Ct. 604 (2013).

45. Because ERISA requires an administrator such as Matrix and Reliance Standard to identify in the Termination Letter "additional material or information **necessary** for the claimant to perfect the claim," 29 C.F.R. § 2560.503-1(g)(1)(iii) (emphasis added), Reliance Standard may not toll its 45-day deadline to make a decision on Mr. Hyde's appeal unless Mr. Hyde failed to provide information Matrix identified as "necessary" to perfect his appeal in its Termination Letter. *See* 29 C.F.R. § 2560.503-1(i)(4); *c.f.* Ex. 1, Termination Letter at 1-5 (failing to claim certain information was "necessary" for Mr. Hyde to perfect his claim)

46. Reliance Standard's June 20, 2016 letter terminating Mr. Hyde's LTD benefits stated "You may request a review of this determination… within 180 days of your receipt of this letter. **Your request should state any reasons why you feel this determination is incorrect, and should include any written comments, documents, records or other information relating to your claim for benefits**, including but not limited to any information submitted in conjunction with any claim for Social Security disability or other benefits which you would like us to consider." (Ex. 1, Termination Letter at 4 (emphasis added)).

47. Matrix's advising Mr. Hyde that his appeal "should state" the reasons he disagreed with the termination and "should include" other documents or information supporting his claim does not convey that such information was "necessary" to Mr. Hyde's appeal pursuant to 29 C.F.R. § 2560.503-1(g)(1)(iii).

48. On December 9, 2016, Mr. Hyde appealed Reliance Standard's decision terminating his LTD benefits (the "Appeal Letter"), faxing and mailing the appeal letter to

Reliance Standard on that date. A true and correct copy of the Appeal Letter is attached hereto as Exhibit 3.

49. Mr. Hyde's Appeal Letter explained why he felt Mr. Hyde felt Reliance Standard's "determination is incorrect" and provided and described additional information and documents confirming his ongoing Total Disability.

50. Under ERISA, Reliance Standard's deadline to make a decision on Mr. Hyde's appeal began on December 10, 2016. 29 C.F.R. § 2560.503-1(i)(4).

51. Under ERISA, Reliance Standard's deadline to make a decision on Mr. Hyde's appeal expired on January 24, 2017. 29 C.F.R. § 2560.503-1(i)(3)(i).

52. However, if Mr. Hyde failed to submit "information necessary to decide [his] claim," Reliance Standard's deadline to make a decision on his appeal would be tolled. 29 C.F.R. § 2560.503-1(g)(1)(iii).

53. Because the Termination Letter did not identify any information as being "necessary" for Mr. Hyde to perfect his appeal, Reliance Standard may not "toll" its deadline to make a decision on Mr. Hyde's appeal pursuant to 29 C.F.R. § 2560.503-1(i)(4) (tolling only applies if claimant fails to submit information "necessary" to perfect claim); *c.f.* 29 C.F.R. § 2560.503-1(g)(1)(iii) (termination letter must advise claimant of "information necessary for the claimant to perfect the claim"); *also compare* Ex. 1, Termination Letter (not identifying any information as being "necessary" to decide Mr. Hyde's appeal).

54. Mr. Hyde submitted the Written Proof of Total Disability required by the LTD plan with his December 9, 2016 appeal.

55. It has been more than forty-five days since Mr. Hyde appealed the termination of his LTD benefits to Reliance Standard.

56. Reliance Standard has not made a decision on Mr. Hyde's appeal.

57. Because Reliance Standard has not made a decision on Mr. Hyde's appeal within forty-five days of his appeal, pursuant to ERISA, 29 C.F.R. § 2560.503-1(l), Mr. Hyde

is "deemed to have exhausted the administrative remedies available under the plan" and may file suit.

58. Mr. Hyde's claims are therefore ripe.

**Count One: Claim For Benefits Under ERISA, 29 U.S.C. § 1132(a)(1)**

59. Reliance Standard, through its "sister company" and administrator Matrix, improperly terminated Mr. Hyde's LTD claim effective July 1, 2016.

60. Mr. Hyde was, and remains, Totally Disabled under the Plan due to his multiple sclerosis and the symptoms and complications thereof.

61. Because Reliance Standard may not "toll" its deadline to make a decision on Mr. Hyde's appeal, and because Reliance Standard has not made a decision on Mr. Hyde's appeal within the deadlines prescribed by ERISA, Mr. Hyde's is deemed to have exhausted his administrative remedies and his claim for benefits is therefore ripe.

62. Because Reliance Standard failed to make a decision on Mr. Hyde's LTD appeal within the deadlines prescribed by ERISA, and failed to engage in a good faith attempt to comply with its ERISA-imposed deadlines, Mr. Hyde is entitled to *de novo* review of his LTD claim. *Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098, 1103 (9th Cir. 2003); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 971 (9th Cir. 2006); *accord Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 57–58 (2d Cir. 2016).

63. Under the *de novo* standard of review, and even under the abuse of discretion standard of review, the decision terminating Mr. Hyde's LTD benefits and the failure to timely reinstate his benefits is incorrect, contrary to the Plan terms, contrary to the wealth of the medical evidence, is arbitrary and capricious, and should be reversed.

64. Mr. Hyde was and remains "Totally Disabled" under the Plan and is therefore entitled to LTD benefits.

65. In administering the Plan, Reliance Standard and its "sister company" and administrator Matrix operate under an inherent financial conflict of interest because Reliance

Standard both funds benefits and determines whether claimants are entitled to benefits. This financial conflict of interest infected the claims process and precluded the full and fair review of Mr. Hyde's claim required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

66. Reliance Standard's and Matrix's inherent financial conflicts of interest influenced and/or drove the decisions to terminate Mr. Hyde's LTD benefits and to then fail to timely reinstate his benefits.

67. Under ERISA, Mr. Hyde is entitled to discovery to show the extent to which the inherent financial conflicts of interest infected the claim process.

68. Mr. Hyde is entitled to a bench trial regarding the effects of the inherent financial conflicts of interest on the decision to terminate his benefits and the failure to timely reinstate his benefits and/or on the credibility of Reliance Standard's and Matrix's medical reviews. *Nolan v. Heald College*, 551 F.3d 1148 (9th Cir. 2009); *compare Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007).

69. Mr. Hyde has been injured and suffered damages in the form of lost LTD benefits as a result of Reliance Standard's and its "sister company" Matrix's wrongful decision to deny his disability benefits.

70. Mr. Hyde has been damaged by Reliance Standard's failures to comply with its ERISA-imposed and Plan-imposed deadlines for making a final decision on Mr. Hyde's appeal.

71. Mr. Hyde has further been injured and suffered damages by losing other benefits to which he may have been entitled under his employer's ERISA-governed benefits plan.

72. Pursuant to ERISA, 29 U.S.C. § 1132, Mr. Hyde is entitled to recover unpaid disability benefits, prejudgment interest, reasonable attorney's fees, and costs from Reliance Standard.

**Count Two: Equitable Relief Arising From Reliance Standard's Breach Of Its Fiduciary Duties, 29 U.S.C. 1132(a)(3)**

73. Upon information and belief, when Reliance Standard and/or Matrix receives an insured's claim for disability benefits, Reliance Standard must set aside claim reserves to cover its potential future liability.

74. Upon information and belief, Reliance Standard's setting aside substantial amounts of claim reserves negatively impacts its profitability.

75. Upon information and belief, when Reliance Standard terminates or denies an insured's claim for long-term disability benefits, it recovers the reserves it had set aside and returns the recovered reserves to the company's general assets.

76. Upon information and belief, when Reliance Standard terminates or denies an insured's claim for long-term disability benefits and recovers the reserves it had set aside to cover its potential future claim liability, Reliance Standard shows increased profitability versus when the claim reserves were held to cover potential future claim liability.

77. Upon information and belief, Reliance Standard and/or Matrix informed some or all of the employees involved in Mr. Hyde's claim about its need to set aside reserves when it receives a disability claim, and/or about the reserves it set aside to cover the potential future claim liability regarding Mr. Hyde's claim.

78. Upon information and belief, the Reliance Standard and/or Matrix employees involved in Mr. Hyde's claim understand that the company's releasing or recovering claim reserves upon a claim's being denied or benefits terminated, and upon appeal decisions being "tolled" or otherwise delayed, increases the company's profitability.

79. Upon information and belief, when Mr. Hyde's disability claim was terminated, Reliance Standard released the reserves it had set aside to cover potential future liability on his claim to the company's general assets.

80. Upon information and belief, when Mr. Hyde's disability claim was terminated, Reliance Standard was able to show increased profitability for the relevant financial accounting and/or reporting period or periods.

81. Upon information and belief, Reliance Standard has an employee incentive compensation and/or bonus program.

82. Upon information and belief, additional compensation paid to employees under Reliance Standard's employee incentive compensation and/or bonus compensation program is determined in part by Reliance Standard's profitability.

83. Upon information and belief, Reliance Standard and Matrix employees, including the employees involved in Mr. Hyde's claim and his appeal, understand that by denying claims, terminating benefits, and/or delaying the payment of claims, Reliance Standard may show increased profitability; and they further understand that this increased profitability may translate to increased employee incentive compensation or bonus compensation for themselves.

84. During the 45 days in which Reliance Standard had to decide Mr. Hyde's appeal under ERISA, Reliance Standard claimed it needed to "toll" its deadline to decide Mr. Hyde's appeal because it claimed it "require[d]" a "narrative" letter form one of Mr. Hyde's attending physicians, and a "full accounting" of his medications were "necessary" to his appeal (the "Tolling Letter"). A true and correct copy of the Tolling Letter is attached hereto as Exhibit 4 (emphasis added).

85. Upon information and belief, Reliance Standard regularly claims a need to "toll" appeal deadlines despite the fact that tolling is only permitted if a claimant fails to submit the information necessary for Reliance Standard to decide an appeal, and even though Reliance Standard fails to notify the claimant in a denial or benefits termination letter that such information is "necessary" to render an appeal decision. Attached as Exhibit 5 are multiple letters from Reliance Standard in other cases claiming a need to "toll" its deadline to make a decision on a claimant's appeal for a variety of reasons (emphasis added).

86. Upon information, Reliance Standard has a pattern and practice of deliberately, in bad faith, and in breach of its fiduciary obligations to insureds like Mr. Hyde, claiming that other information is "necessary" or "required" to make a decision on a disability appeal and that it must therefore "toll" its decision deadline while awaiting the requested information even though its denial or benefits termination letters failed to identify the requested information as being "necessary" to decide the appeal, even though Reliance Standard and its "sister company" did not find the requested "necessary" to confirm that its benefits termination or denial was proper or correct, and even though the information claimed to be necessary in a "tolling" letter is not specified as being necessary in the applicable LTD plan documents. (*See e.g.* Exs. 4-5)

87. Reliance Standard's requesting to "toll" its decision deadline has the effect of delaying its obligation to pay compensable claims.

88. Upon information and belief, Reliance Standard has a corporate policy of claiming a need to "toll" its decision deadline in order to delay its obligation to pay compensable claims.

89. Upon information and belief, Reliance Standard earns substantial interest and/or return on equity on its holdings, including its cash holdings.

90. Upon information and belief, Reliance Standard's corporate policy, pattern, and/or practice of claiming a need to "toll" its deadline to make a decision on an appeal is driven, in whole or in part, by its desire to delay payment of compensable claims as long as possible in order recoup as much interest and/or return on equity before it may need to pay a compensable claim.

91. Upon information and belief, Reliance Standard has a corporate policy, pattern, and/or practice of not paying insureds interest on benefits that are retroactively paid or reinstated following an appeal, or otherwise does not compensate insureds for the use of their unpaid benefits while their claims are denied and unpaid.

92. Reliance Standard is a fiduciary under ERISA.

93. As a fiduciary under ERISA, Reliance Standard may not put its interests ahead of the interests of its insureds.

94. Under ERISA, Reliance Standard may be liable for its breaches of its fiduciary obligations to Mr. Hyde separately and distinct from its liability for unpaid disability benefits.

95. In *CIGNA Corp. v. Amara*, 563 U.S. 421, 444, 131 S. Ct. 1866, 1881-82, 179 L. Ed. 2d 843 (2011), the Supreme Court endorsed one form of equitable relief — a surcharge against the administrator — which is available upon a showing that the administrator breached its fiduciary duties and that the breach harmed the participant: "To be sure, just as a court of equity would not surcharge a trustee for a nonexistent harm, 4 Scott & Ascher § 24.9, a fiduciary can be surcharged under § 502(a)(3) [i.e. 29 U.S.C. § 1132(a)(3)] only upon a showing of actual harm—proved (under the default rule for civil cases) by a preponderance of the evidence…"

96. Additional equitable remedies available under 29 U.S.C. § 1132(a)(3) and *Amara*, 563 U.S. at 440, include but are not limited to: equitable reformation of an ERISA plan and restitution to remedy harm caused by an administrator's breach of its fiduciary obligations.

97. By having a corporate policy of claiming a need to "toll" its deadline to make a decision on a claimant's appeal in order to delay payment of compensable claims, while simultaneously earning substantial interest and/or return on equity from the unpaid benefits, and by not paying interest on benefits reinstated following an appeal, Reliance Standard places its interests ahead of the interests of its insureds.

98. Reliance Standard's placing its interests ahead of the interests of its insureds by claiming a need to "toll" its deadline to make a decision on a claimant's appeal constitutes a breach of Reliance Standard's fiduciary duties to its insureds, including Mr. Hyde.

99. As a result of Reliance Standard's placing its interests ahead of the interests of Mr. Hyde and breaching its fiduciary duties to Mr. Hyde, Mr. Hyde has been damaged in a

manner separate and distinct from Reliance Standard's denial of his benefits and separate and distinct from his claim for benefits under 29 U.S.C. § 1132(a)(1).

100. Among other things, Reliance Standard's placing its interests ahead of Mr. Hyde's interests has caused Mr. Hyde financial harm and distress including his having to continue carrying high-interest debt due to Reliance Standard's improper denial of his benefits, as well as its unsupported claim to need to "toll" its decision deadline; and emotional distress and complications to his severe medical conditions due to the stress placed upon him by Reliance Standard's and Matrix's breach of their fiduciary obligations to Mr. Hyde, in connection with the improper termination of his ongoing LTD benefits and improper claim to need to "toll" its deadline to make a decision on his appeal.

101. Under 29 U.S.C. § 1132(a)(3) and *Amara*, Mr. Hyde is entitled to equitable relief for the separate and distinct harm he suffered as a result of Reliance Standard's and its "sister company" Matrix's breaches of their fiduciary obligations.

102. Under 29 U.S.C. § 1132(a)(3) and *Amara*, and due to Reliance Standard's and Matrix's breaches of their fiduciary obligations toward Mr. Hyde, Mr. Hyde is entitled to equitable relief including but not limited to: a surcharge against Reliance Standard in the amount of the financial harm Mr. Hyde suffered in excess of the value of his unpaid disability benefits and any interest paid upon the reinstatement of his lost disability benefits; restitution against Reliance Standard in the amount of the financial harm Mr. Hyde suffered in excess of the value of his lost disability benefits and any interest paid upon the reinstatement of his lost disability benefits; injunctive relief precluding Reliance Standard from improperly asserting a need to "toll" its deadline to make a decision on an appeal unless Reliance Standard specifically advised an insured such as Mr. Hyde in its letter denying or terminating the claimant's benefits that certain information was necessary for the appeal and which, if not submitted, would require Reliance Standard to toll its decision deadline; equitable reformation of the Plan to permit Mr. Hyde to recover damages in the amount of the financial harm he suffered in excess of the value of his lost disability benefits

and any interest paid upon the reinstatement of his lost disability benefits; equitable reformation of the Plan to permit Mr. Hyde to recover any interest or return on equity which Reliance Standard earned due to its breaches of its fiduciary obligations to Mr. Hyde and its failure to timely pay Mr. Hyde's disability benefits; and any other equitable damages or relief to which Mr. Hyde may be entitled.

103. Pursuant to *Amara* and other law, Mr. Hyde need only prove his claim for equitable relief under 29 U.S.C. § 1132(a)(3) by a preponderance of the evidence.

104. Pursuant to *Amara* and other law, to prevail on his claim for equitable relief under 29 U.S.C. § 1132(a)(3), Mr. Hyde need only prove by a preponderance of the evidence that Reliance Standard caused him harm.

105. Pursuant to *Amara* and other law, Mr. Hyde need only prove by a preponderance of the evidence the damages Reliance Standard caused him to prevail on his claim for equitable relief under 29 U.S.C. § 1132(a)(3).

106. With respect to Mr. Hyde's claims for equitable relief under 29 U.S.C. § 1132(a)(3) and *Amara*, Mr. Hyde is entitled to discovery in order to prove Reliance Standard's and/or Matrix's violations of their fiduciary obligations to Mr. Hyde, and to prove that their violations of their fiduciary obligations to Mr. Hyde are consistent with a corporate pattern and practice designed to elevate the company's interests over the interests of its insureds.

107. With respect to Mr. Hyde's claims for equitable relief under 29 U.S.C. § 1132(a)(3) and *Amara*, Mr. Hyde is entitled to *de novo* review as to Reliance Standard's violations of its fiduciary obligations.

108. With respect to Mr. Hyde's claims for equitable relief under 29 U.S.C. § 1132(a)(3) and *Amara*, Mr. Hyde is entitled to a bench trial as to Reliance Standard's violations of its fiduciary obligations.

WHEREFORE, Plaintiff William Hyde prays for judgment as follows:

A. For long-term disability benefits due under the Plan;

B. For any other benefits Mr. Hyde may be entitled to receive under his employer's ERISA benefits plan due to his disability;

C. For equitable relief to, among other things, remedy the harms caused by Reliance Standard's violations of its fiduciary obligations;

D. For pre- and post-judgment interest;

E. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. § 1132(g); and

F. For such other relief as the Court deems just and proper.

DATED this 1st day of February, 2017.

LAW OFFICE OF PATRICK MAUSE, PLLC

By s/ Patrick W. Mause
Patrick W. Mause
Attorney for Plaintiff